## CHARLESTON.

### CROSS *v.* W. VA. C. & P. R'Y CO.

Submitted January 27, 1891.—Decided February 7, 1891.

1. MANDAMUS.

The writ of mandamus from its nature and subject-matter must not leave its range of action to indeterminate outside ascertainment, but must indicate with reasonable certainty the precise thing to be done.

2. MANDAMUS.

Where an alternative writ of mandamus issues commanding a director of a railroad company to show cause why he should not vacate said office of director then held by him and surrender the same to the petitioner, it is necessary that said writ should be served upon said director either personally or by publication. Otherwise the court can not pass upon or determine his right.

*Clayton & Dailey* for plaintiff in error, cited:

41 N. J. L. 250; 42 N. J. L. 402, 403; High Ex. Leg. Rem. § 9, 10, 14, 49, 440; Const. Art. XI, s. 4; 17 Otto 174; 27 Lawy. Coop. Rep. 402, p't 11, Syll.; 2 Otto 665;

37 Md. 537–567; 21 Lawy. Coop. Rep. 945; 113 U. S. 465; 28 Lawy. Coop. Rep. 1050; Code, c. 53, ss. 5, 9, 44; Id., c. 54, ss. 12, 56, 70; Acts 1872-3, c. 181, s. 14; 8 W. Va. 74; 25 W. Va. 324; 4 Wheat, 518; 82 Pa. St. 518; 78 Mo. 188; 109 Pa. St. 471; 44 Conn. 318; 3 Johns. Cas. 78; 2 Johns. Cas. 217 and note; 12 Am. Dec. 26; 1 Wood R'y Law § 144; Ang. & Am. Corp. 685; 18 Ind. 327; 1 Ark. 513; 3 Ark. 570; 39 N. J. L. 677; 17 W. Va. 640; 19 Wend. 37; Code, c. 109, s. 10; 13 N. E. Rep. 279.

*Flournoy & Price* and *W. E. Cross* for defendants in error, cited:

Code, c. 123, s. 3; Const. Art. VIII, s. 12; 17 W. Va. 610, 621; Id. 396; 13 Otto 480; 42 N. J. L. 402, 403; Code, c. 52, ss. 18, 20; Id., c. 124, ss 2, 7, 13; Id., c. 54, ss 24, 36, 37, 40, 67, 70; 3 Keyes 81; 27 W. Va. 762; 7 Pet. 252; 2 Pet. 556; 3 Wheat. 591; 9 Wheat. 738; 2 Madd. Ch'y 142; 7 Wall. 425; 18 Wall. 391; 113 U. S. 465; 96 U. S. 499; 15 Ohio St. 21; 22 Ohio St. 411; 132 U. S. 75; 2 Mor. Corp. § 1095; Cool. Const. Lim. § 152 and note 4; 12 Mass. 555–563; 18 Gratt. 295–300; 26 W. Va. 257; 17 Wall. 425; Acts 1881, c. 50; Code, c. 53, s 44; Const. Art. VI, s. 30; 9 W. Va. 162; 26 W. Va. 62–75; 40 N. W. Rep. 561; 7 W. Va. 520, 524, 525; Const. Art. XI. s. 4; 1 Vroom 368; 2 Vroom 575; 25 W. Va. 325, 373; 28 W. Va. 698; 11 W. Va. 501; 8 W. Va. 74, 87; Id. 720, 730 *et seq.;* 13 Mich. 482–497; Code (1868) c. 53, ss. 5, 7; 5 Ind. 49; 31 W. Va. 781.

HOLT, JUDGE:

On the 4th day of September, 1890, the Circuit Court of Mineral county entered an order awarding a peremptory writ of *mandamus* commanding the respondent, the West Virginia Central & Pittsburgh Railway Company, to forthwith receive and recognize the relator, W. Irvine Cross, as a director of the said West Virginia Central & Pittsburgh Railway Company for the year for which directors were elected at the last general meeting of the stockholders of said company, held to elect directors for said company for the year 1890. The execution of the order was suspended on motion of the railway company, and the cause brought here on writ of error.

On the 19th day of April, 1890, W. Irvine Cross presented his petition to the judge of the Circuit Court of Mineral county, representing that he was a stockholder of the West Virginia Central & Pittsburgh Railway Company; that a corporation called the "Potomac & Piedmont Coal & Railroad Company" was chartered by the legislature of West Virginia by act of legislature of the 26th of February, 1886; that by act of 16th of February, 1871, the time for organization was extended for three years from February 16, 1871; that in 1872 the people of the State adopted a new constitution containing the present section 4 of Article XI, by which cumulative voting of stockholders for election of directors or managers was prescribed; that the legislature in April, 1873, passed an act to carry out that provision of the constitution, and in the same year another act to the same effect; that on the 25th of March 1882, another act was passed to carry into effect that part of the constitution; that on the 23d of February, 1881, an act was passed changing the name of the Potomac & Piedmont Coal & Railroad Company to the West Virginia Central & Pittsburgh Railway Company, conferring large additional and different powers and increasing the limit of capital stock from five million dollars to ten million dollars; that on 25th of June, 1881, the West Virginia Central & Pittsburgh Railway Company organized and has been in operation ever since; that by reason of the premises the stockholders have the right to cumulate their shares in the election of directors; that on the 28th day of February, 1890, at the regular annual meeting of the stockholders, petitioner was, by the cumulative method, legally elected a stockholder with others, receiving sixty nine thousand three hundred votes, whereas W. W. Taylor, who only received forty four thousand and eighty eight votes, the lowest number, was illegally declared elected; that petitioner was not declared elected; that petitioner demanded of the company recognition as a director, but it was refused; that he demanded of W. W. Taylor that he should vacate the office of director, which was then held by him, and allow petitioner to fill it, but Taylor refused, and continued to hold said office and act therein.

He therefore prayed that a writ of *mandamus* should be granted him, directed to said W. W. Taylor, commanding him to vacate the said office of director then held by him, and surrender the same to petitioner, and also directed to the West Virginia Central Railway Company, ordering and directing it to receive and recognize petitioner as a director of said company.

This petition was sworn to, and thereupon the judge in vacation on the 21st of April, 1890, by order following the petition, ordered the alternative writ to issue. On the same day the alternative writ following the same recitals was issued, and service thereof had on G. W. Harrison, attorney appointed by the railway company for such purpose. It was served personally on W. W. Taylor by delivery of a copy to him at his residence in the city of Baltimore on the 22d of April, 1890. The service of the alternative writ was noted, and the cause docketed in the Circuit Court of Mineral county. On the 24th of April, the railway company, appearing only for that purpose, moved to quash the writ and the return of service on it, and on the 3d of May, 1890, Taylor, appearing only for that purpose, moved to quash the return of service on him; and thereupon the Court overruled the motion to quash the return of service on the railway company, sustained the motion to quash the return of service on Taylor, and sustained the company's motion to quash the alternative writ itself. Thereupon the Court, on motion of the relator, Cross, permitted an amended alternative writ to be filed, also directed to the railway company and Taylor, as the original alternative writ had been, commanding the same things unless they showed cause against it. This alternative writ was never served or attempted to be served on Taylor in any manner.

On the 10th day of June, 1890, the railway company, for cause why the peremptory writ of *mandamus* prayed for should not issue, filed their answer showing: (1) that the Circuit Court of Mineral county had no jurisdiction; (2) that the writ was directed to respondent by its corporate name, and not to the directors as a body, or as individuals composing the board; (3) that W. W. Taylor, whose

place as a director Cross, the relator, seeks to take, and against whom he prays a writ of *mandamus* to compel him to surrender the office of director to Cross, is a non-resident of the state, and not a party to this proceeding, the service of the writ on him having been quashed; (4) after reciting constitution, statutes, charters *etc.*, on the subject, respondent claims and avers that the system or principle of cumulative voting has never been applicable to said company; (5) that no meeting of its stockholders was held on the 28th of February, 1890, for the election of directors; that neither Cross nor any directors were elected for a year beginning on that day; that Cross never demanded of Taylor that he should vacate the office and allow Cross to fill the same, or of the company that it should recognize him as a director; that the stockholders did for the year 1890, duly elect directors, W. W. Taylor among them, and that said directors had entered upon the discharge of their duties, and were continuing to discharge the same; and that the question raised was one of contested election and title to office, not to be properly tried by a writ of *mandamus;* and they pray judgment whether or not said writ should be issued.

.On the 4th day of September, 1890, the relator, W. Irvine Cross, demurred to respondent's answer, in which demurrer respondent joined, and the Court, having considered the matter, was of opinion that the answer was insufficient, and sustained the demurrer, and thereupon it was considered by the Court and ordered that a peremptory writ of *mandamus* be issued in this case without delay, peremptorily commanding the respondent, the West Virginia Central & Pittsburgh Railway Company, to forthwith receive and recognize the said relator, W. Irvine Cross, as a director of the West Virginia Central & Pittsburgh Railway Company for the year for which the directors were elected at the last general meeting of the stockholders of said company, held to elect directors for said company for the year 1890, to which ruling respondent excepted.

The writ of *mandamus* from its nature does not leave its scope—its range of action—to indeterminate outside ascertainment, but contemplates the necessity of indicating the

precise thing to be done; and to this end the court has full power to be advised by the finding of a jury or otherwise of the preliminary facts, and it makes its peremptory writ reasonably precise and certain, so that, among other things, it may know that said writ has been executed or obeyed. This order for the writ to go leaves us in the dark as to when W. Irvine Cross's term begins or ends, so much so that we can not tell whether we are called upon now to decide moot questions or not. We know that the last day of January, 1890, has expired, and that the fourth Tuesday of January, 1891, has passed (see Code, c. 53, s. 41) and we only know for a certainty, taking the answer demurred to as true, that the term of office did not begin on the 28th day of February, 1890. It has all the other working days of 1890 to begin on. To now enforce the relators recognition as director may be a vain and idle thing. But we are confronted with a more serious matter.

It appears—is admitted—that W. W. Taylor claims to be director for the year 1890 as matter of right, and that he is in as matter of fact, and, although a party by name, he has not appeared, been served or proceeded against in any way to put his claim to the office within the power of adjudication by the court. How can we pass upon or determine his right without giving him his day in court? That he is a non-resident of the State may put him out of reach of an attachment, but does not put him out of reach of an order of publication. This is fundamental. To hold that he has a right to the office without being before the court would be giving him more than he is entitled to. To hold that he has no right to the office without giving him an opportunity to be heard, would offend our common-law sense of fair dealing. In fact, to compel the railway company to do what it must do in order to obey this writ would, if done of its own motion, be ground for *mandamas* to compel them to undo it. *Delacy* v. *Navigation Co.*, 1 Hawks, 274.

But it is said the respondent has delayed the cause for a purpose; that the case is a hard one; and we are urged to go on and pass upon the one question involved. Hard cases make bad law. We know by experience when we go

out of our way to decide something not in the record we often stumble into error. A people older if not wiser in matters of law than the Romans had observed this, and gave a reason. Their reason for it was: "When the judge goes out of his way to decide a matter not before him, he ceases to be inspired." He would certainly not be inspired with the point of law springing up out of the facts of the case. We are of opinion therefore that there is error in the order of the Circuit Court of Mineral county of 4th September, 1890, awarding the peremptory writ of *mandamus;* and the same must be reversed and set aside.

REVERSED.

# CHARLESTON.

