# Wheeling.

THE STATE *v.* WADE *et al.*

Decided November 1, 1879.

1879
Special Term.

1. A sheriff executed an official bond with security on July 24, 1869, and a new bond with other securities on March 15, 1870. He pays into the treasury on January 26, 1870, nearly three-fourths of the taxes of 1869, and directs that the payment shall be applied to the taxes of 1869. The auditor nevertheless directs the treasurer to apply the whole of the payment made January 20, 1870, to the taxes of 1867 and 1868 for which the sheriff was delinquent, claiming the right to do so under section 2, ch. 17 of Code of West Virginia; and the treasurer accordingly so applies this payment. The sheriff and his sureties then apply to the Legislature to pass an act directing the auditor to apply the whole of this payment to the taxes of 1869. The Legislature then, March 2, 1870, passed an act directing the auditor to credit to the taxes of 1869 this payment, or so much thereof as the auditor may be satisfied was collected out of the taxes due the State for 1869. See Session Acts of 1869, ch. 89, p. 99. The auditor then credited a part of that payment to the taxes of 1867 and 1868 and a part to the taxes to 1869. HELD:

I. That as only three-fourths of the taxes of 1869 were required to be paid into the treasury by the sheriff prior to May 1, .1870, the sureties in the first bond were not bound for more than three-fourths of the taxes of 1869 ; and the sureties in the second bond were bound for the remaining one-fourth

II. The auditor was bound, when directed at the time of payment, to apply the whole of the payment made January 20, 1870, to the taxes of 1869.

III. The Legislature did not by the special act passed March 2, 1870, either authorize or direct the auditor to apply any part of this payment to the taxes of 1867 and 1868; and they had no power so to do.

. IV. The application afterwards of a part of this payment to the taxes of 1867 and 1868 by the auditor was illegal; and the sureties in the bond of July 24, 1869, are entitled to a credit of the full amount of the payment on the taxes of 1869, for which they were bound.

Writ of error to a judgment of the circuit court of the county of Kanawha, rendered on the 22d day of December, 1877, in an action in said court then pending, wherein The State of West Virginia was plaintiff and Isaac A. Wade and others were defendants, allowed on the petition of the plaintiff.

Hon. Homer A. Holt, judge of the eighth judicial circuit rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case:

· Isaac A. Wade was elected sheriff of Putnam county for the term of four years, beginning January 1, 1867, and gave his official bond. On June 12, 1869, the circuit court of said county, holding his bond to be insufficient, ordered him to execute a new official bond in the penalty of $40,000.00, with good security, in the same manner as if none had been given by him. This new bond was executed and approved. It was dated July 24, 1869, was in the penalty of $40,000.00, and was conditioned : " If the said Isaac A. Wade shall faithfully discharge the duties of said office according to law, the the above obligation to be void, otherwise to remain in full force and virtue." It was executed by Isaac A. Wade, as principal, and Joseph Hutton, James W. Powers, William Cash, Alexander Worden, G. T. Anderson, B. L. Anderson, Asbury Stalnaker and Edward T. Sims, and nine others, as his sureties. At the instance of the above named sureties, other than Hutton, the circuit court of Putnam, on March 14, 1870, again ordered the said Wade to give a new bond, again in the same manner as if none had been given by him. This bond was executed and approved. It was in the same

penalty as the former bond and with the same conditions, and it bears date March 18, 1870, and was executed by said Wade, as principal, and by eleven sureties, eight of them being sureties in his former bond; but none of the sureties above named executed this last bond.

The entire State taxes for the year 1869, which went into the the hands of Isaac A. Wade, as sheriff of Putnam county, to collect, were $6,407.80, of which three-fourths, or $4,805.85, were by law payable into the treasury on or before January 2, 1870, and the remaining one-fourth on or before May 1, 1870, (see Code of W. Va., ch. 30, §25, p. 184), that is, some six weeks after the sheriff had executed a new bond with security on March 18, 1870. On the 26th day of January; the said sheriff paid into the treasury in money and in a small claim against the State, received as money, the sum of $4,363.58; and when this was paid express directions were given that it should be applied to the payment of the taxes of 1869, in his hands for collection and with which he was chargeable. The auditor, however, claiming the right to do so under §2 of ch. 17 of Code of W. Va., p. 104, directed the treasurer to receipt for this payment on account of taxes for years prior to 1869, they being unpaid; and the treasurer accordingly credited this sum on account of taxes for the years 1867 and 1868; and thereupon Wade and his sureties above named "applied to the Legislature, then in session, to pass an act directing the auditor to credit the accounts between Wade and the State for the year 1869 with the payment of this $4,363.58." The Legislature thereupon passed the act of March 2, 1870, Session Acts of 1870, ch. 89, entitled: An act for the relief of Isaac A. Wade, sheriff of Putnam county, whereby "the auditor is directed to place to the credit of Isaac A. Wade, sheriff of Putnam county, on account of taxes charged to him as sheriff of said county, for the year 1869, the sum of $4,363.58, paid into the treasury by William Cash, deputy and security of said Wade, sheriff

as aforesaid, or so much thereof as the auditor may be satisfied was collected out of the taxes due the State from the said county of Putnam for the year 1869.", The auditor, after the passage of this act, applied $3,077.33, part of said sum, to the account of said Wade for the taxes of 1869, that is, $2,000.00 to the account of taxes for general State purposes for 1869 and $1,077.33 to the account of taxes for the support of free schools for 1869. The residue of said sum he applied as a credit to the taxes of 1867 and 1868. To this action of the auditor the sheriff and his said sureties above named objected.

The said sheriff by his said deputy and surety, William Cash, also paid into the treasury at Wheeling, just on the eve of the removal of the capital to Charleston, which took place April 1, 1870, see Session Acts of 1869, ch. 73, p. 42, $1,127.28, of which $812.00 was credited to Wade's account of the taxes of 1869, other than the account of taxes for the support of free schools, and account of taxes for general State purposes, which alone are the subjects of controversy in the motions hereinafter mentioned ; and the balance of this sum, or $315.28, was credited on the account of school taxes for 1869, which account was the basis of one of said motions and the subject of controversy in this cause. It does not appear that Wade or, any of his securities requested that any more than this $315.28 of this payment should be placed to the credit of the account of taxes for 1869, for the support of free schools, or that the crediting of the balance $812.00 to the account of other taxes, not the subject of controversy now, was objected to when the credit was given.

The auditor by the law keeps in his office separate accounts of the particular heads or sources of revenues, see Code of W. Va. ch. 17, §4 p. 105, that is, accounts " of taxes for general school purposes"—" of taxes for the support of free schools"—" of taxes for the further construction of the hospital for the insane at Weston"— " for State tax or license"—" for fines imposed by courts"

—for fines imposed by justices;" there being these separate sources of revenue. The commission of the sheriff on taxes, if he paid the same into the treasury within the time required by law, when the amount did not exceed $1,000.00, was seven and one-half per cent ; if not so paid, it was but two and one-half per cent. See Code of W. Va. ch. 30, §28, p. 185. The delinquent list for the year 1869, amounted to $324.00.

The auditor, under sections 2 and 3 of ch. 35 of Code of W. Va., p. 219, in February, 1872, gave notices to Isaac A. Wade, late sheriff of Putnam county, and all his sureties in the bond executed July 24, 1869, that he would on March 20, 1872, move the circuit court of Putnam county for a judgment against them and each of them for the sum of $3,075.27, the amount of taxes for the support of free schools for 1869, which had gone into the hands of said sheriff for collection and had been by him collected and not paid over; and also another notice of a like motion against the same parties for a judgment by the same court at the same time for the sum of $3,332.54, the amount of taxes for general State purposes for 1869, which had gone into the hands of said sheriff for collection and had been by him collected and not paid over. These notices were served more than thirty days before their return day on all the parties to them except Amos Harris, who was returned no inhabitant.

These two notices were by order of the court consolidated ; and the court overruled motions to quash them. They were drawn in the form of notices against the sheriff and his sureties given in Robinson's Forms.

One of the defendants, A. H. Blake pleaded *non est factum* to these notices ; and the other defendants, whose names have been before given, to-wit : James W. Powers, William Cash, Alexander Worden, G. P. Anderson, B. L. Anderson, Asbury Stalnaker, Joseph Hutton and Edward T. Simms, pleaded covenants performed, *non damnificatus*, and payments, and set-off with specifications thereof; and issue was joined on these pleas. A jury

was sworn to try these issues, and also to assess the plaintiff's damages; and they found a verdict against the above named defendants of $167.91, and against the other defendants, other than A. H. Blake, they assessed the plaintiff's damages at $1,531.96; and on the motion of the plaintiff this verdict was set aside and a new trial awarded. The defendants who pleaded formerly to these notices, other than said A. H. Blake, filed the plea of conditions performed, on which issue was joined, and also the plea of the statute of limitations that the cause of action did not accrue within three months before action brought, which pleas were rejected by the court. The court also overruled demurrers to these notices, and struck out the plea of *non damnificatus;* and the cases were abated as to Daniel Carr, who had died. A jury was then, December 11, 1877, sworn to try the issues which had been joined; and on December 14, 1877, they found a verdict for the defendants on these issues. The plaintiff moved the court for a new trial, which the court refused, and the plaintiff took a bill of exceptions to this action of the court. The facts proven at the trial are all certified and are substantially as heretofore stated.

During the trial two instructions were asked by the plaintiff and refused by the court; and two other instructions were asked by the defendants and granted by the court. The plaintiff also excepted to the action of the court on each of these instructions.

The two instructions asked by the plaintiff and refused were as follows:

"1. If the jury believe from the evidence that the act of the Legislature of West Virginia, passed March 2, 1870, and which is in evidence in this case, was passed at the instance of Isaac A. Wade, and such of his sureties as are defending this suit, and that after the passage of said act the auditor acted thereunder and credited the accounts of said Wade for 1869 with the whole amount specified in such act, or any part thereof, then such action of the auditor is conclusive on the parties in this suit of

66

the proportion of the payment mentioned in said act for which the defendants are entitled to credit on the accounts sued on."

" 2. The court instructs the jury that the sureties in the bond in evidence and bearing date on the 24th day of July, 1869, are liable on such bond for all taxes for which the principal in such bond has failed to account, and which were chargeable to such principal during their suretyship; and this, notwithstanding the execution of the new bond in March, 1870, also in evidence before the jury."

The two instructions asked for by the defendants and granted were:

" 1. The court instructs the jury that if they believe from the evidence that the defendant, Wade, upon the application of William Cash and others of his co-securities was required by the circuit court of Putnam county to give a new bond, and that such new bond was given by said Wade and approved according to law, then the defendant, Cash, and his co-securities are not liable for any breach of duty of said Wade as sheriff occurring after the approval of said new bond.

" 2. The court instructs the jury that the failure to pay the taxes into the treasury at the time fixed by law, and not the failure to collect said taxes, constitutes the breach of a sheriff's bond."

The court on the 22d of December, 1877, rendered a judgment for the defendants above named who had put in said pleas, on which issue was joined and a verdict found in their favor. This court allowed a writ of error to said judgment on a petition filed by the plaintiff.

*William H. Hogeman,* for plaintiff in error, cited the following authorities:

8 Pet. 384; 14 Pet. 458; 4 Rand. 432; 11 Gratt. 655; 3 Story 742.

H. C. McWhorter and J. H. Brown, for defendants in error, cited the following authorities:

Code, ch. 30, §§25, 26 ; Id. ch. 10, §§21, 22, 23, 11 Mo. 583; 3 Humph. 189; 1 Am. Rep. 201; 9 Ala. 484; 2 Dev. L. 489; 7 Ired. L. 198; Acts 1869, ch. 73; 47 Me. 515; 50 Me. 36; Code, ch. 10, §6; 3 Leigh 703; 5 Pet. 388.

GREEN, PRESIDENT, delivered the opinion of the Court:

The record in this case shows, that a number of questions were raised in the court below on the pleadings and proceedings which occurred prior to the trial of the issues by the jury ; but neither party, by their counsel, presents any of these questions to this Court. The counsel on both sides have argued this case on its merits only. We shall therefore confine our consideration to the action of the court during the trial of the case and its refusal to set aside the verdict of the jury. To reach a conclusion whether the circuit court erred in these matters we must first determine the extent of the legal liability of the sureties of the sheriff in his official bond, July 24, 1869, and the extent of the legal liability of the sureties in his official bond of March 18, 1870.

The 23d section of ch. 10 of Code of W. Va., p. 82 provides, that when such new bond is given, " the sureties in the former bond and their estates shall be discharged from all liability for any breach of duty by such officer after that time." The sureties therefore in the bond dated July 24, 1869, were by the execution of this new bond expressly discharged from all liability by any breach of duty committed by the sheriff after the execution of this new bond, that is, after March 18, 1870.

By the Code of W. Va. ch. 30, §25, three-fourths of the assessment of taxes for 1869, which came into the hands of the sheriff, was required to be paid on or before January 20, 1870, and the remainder on or before the

Syllabus 1.

1st day of May, 1870. It is therefore, it seems to me, obvious there can be no breach of his official duty, if the sheriff failed to pay into the treasury before May 1, 1870, the one-fourth part of the taxes which he is not required to pay before that time. If he complied with the law, and paid into the treasury three-fourths of the taxes due from him on or before January 20, 1870, there could be no breach of his official duty with reference to the collection and payment of taxes on March 18, 1870. Even if it were proven that all taxes of 1869 had been collected before January 20, 1870, and that only three-fourths of them were then paid into the treasury, it seems clear there would be no breach of his official duty; for it is clear that no suit could be brought against him for failing to pay the remaining fourth till after it was payable on May 1, 1870. The failure to pay into the treasury at the time the law requires payment is the breach of duty; and not the failure to pay over the taxes as fast as collected. It seems to me so clear that a breach of duty by a sheriff can not take place till the time the law requires him to pay over the money he has collected has arrived, and that if, after the collection and before the time he is required to pay over the money, he executes a new bond, that the sureties in the new bond, and not those in the old bond, are responsible if he fails to pay over the money so collected, that it is hardly necessary to sustain this position by the citation of authorities. But this proposition is abundantly sustained by the authorities. See *Warren et al.* v. *The State,* 11 Mo. 583; *Miller* v. *Moore,* 3 Humph. 189; *Dumas & Co.* v. *Patterson et al.* 9 Ala. (new series) p. 484.

The extent of the liability of the sureties of the sheriff therefore in this case is three-fourths of the taxes for 1869, which had come into his hands and which he had failed to pay over. He could not be held responsible for the remainder of these taxes, because he was not required to pay them into the treasury till May 1, 1870, and before that time, on March 18, 1870, he had given

a new bond; and the sureties on this bond are the parties who must be held responsible for a failure to pay over this one-fourth after the deduction of the delinquent list. Such is the extent of the liability of the sureties on the old bond. They are of course entitled to a credit for any moneys paid into the treasury on the taxes of 1869, sued upon, which was paid prior to the execution of the new bond March 18, 1870, and also to the sheriff's commission on the said sum. If the money was so paid prior to January 25, 1870, the proper commission would be seven and one-half per cent, otherwise two and one-half per cent. See Code of W. Va., ch. 31, §28, p. 185. In this case no money was paid till January 26, 1870, six days after the time fixed by law. The sheriff was therefore entitled to but two and one-half per cent. The auditor nevertheless gave him credit by seven and one-half per cent; and the account allowing this credit was proved by the plaintiff in this case to the jury. If the jury allowed this credit in forming their verdict, the plaintiff cannot have it set aside on that account, as there is nothing in the record to show that the plaintiff in the trial of this case asked the jury to reduce the amount of this credit which he had given in the account on the books of the auditor.

The sureties in the official bond of July 24, 1869, were also entitled to a credit of $315.12 paid on the school taxes of 1869, about April 1, 1870, and to the sheriff's commission on the same. This sum, it is true, was paid after the giving of the new bond on March 18, 1870; but when it was paid none of the taxes of 1869 were due from the sheriff to the State, except those due January 20, 1870, the balance of these taxes not being due till May 1, 1870. The receipt of the treasurer shows that this sum was paid on the school taxes of 1869; and it must therefore, in the absence of any evidence to the contrary, be regarded as a payment on the taxes due January 20, 1870, rather than on taxes not then due, and which did not fall due till the 1st of May following.

1879
Special Term.

The State
v.
Wade et al.

The receipt for this money was not given till February 21, 1871 ; but it was distinctly proven it was paid about April 1, 1870, and no receipt then given, because of the confusion in the auditor's office, as the capital was then being moved from Wheeling to Charleston. The defendants in this suit have no claim to any credit for the $812.00 paid at the same time, as it is proven that it was applied to the payment of other taxes of 1869, for which the defendants in this suit were bound, and which were not in suit in this case. The charges then against the defendants in the issues tried by the jury amounted to $4,805.58 ; and the credits, which the jury, so far as this record shows, could have allowed without just complaint by the plaintiff, were: Money paid January 20, 1870, $4,363.58, commissions on the same at seven and one-half per cent., $327.12, and $315.28 paid about April 1, 1870, and the commission on the same ; and as the credits exceeded the plaintiff's just demand, the jury might properly find a verdict for the defendants. Or if at the trial the defendants objected to the allowance of more than two and a half per cent commission, which the record does not show, the jury may then have only allowed a commission of two and a half per cent, or $109.04. The credits then would still reduce the plaintiff's demand to $18.22, which would have been nearly extinguished by the sheriff's commission on this $315.28. I think, therefore, the court did not err in refusing to set aside this verdict.

The counsel for plaintiff in error however insists, that the auditor had a right to do as he did and apply the whole Syllabus 2. of the $4,363.58 to the taxes due from the sheriff for the years 1867 and 1868, and for which a different set of sureties were bound, though he was expressly directed, when this payment was made, to apply it to the payment of the taxes of 1869. This right of the auditor to apply this payment to the taxes of former years against the direction and protest of the sheriff is based on section 2, chapter 17 of Code of West Virginia

p. 104, which says that the auditor shall "direct upon what account or accounts the treasurer shall receipt for a payment" into the treasury. This, it is claimed, justified the auditor in directing this amount to be applied as a credit on former years on taxes still unpaid, and for which other sureties were bound.

I do not so understand this statute. By section 4 of same chapter, page 105, the auditor is directed "to keep in his office separate accounts of the particular heads or sources of revenue," that is, "an account of the taxes for general school purposes," "for the support of free schools" —"for the further construction of the hospital for the insane at Weston," &c.—there being a particular part of the tax assessed for each of these purposes. Of course the sheriff and his sureties have no sort of interest to which of these several accounts a payment is allowed as a credit, as the sheriff and the same set of sureties would be bound for the taxes of a particular year, whether appropriated for one or the other of these purposes. The law therefore very properly left it to the auditor to direct to which of these accounts a particular payment should be credited, so that it should go to the account, to which the convenience of the State at the time required it to go, and of which the auditor is always in a condition to judge. This I understand was the discretion intended to be conferred on the auditor; a discretion, the exercise of which could not possibly injure any set of sureties. But to construe this statute to authorize the auditor at his mere will and pleasure to apply a sum of money, paid on the taxes of one year, to the taxes of other years, so as to relieve one set of sureties from responsibility and attach responsibility to another set, would be to convert a statute, intended merely for the convenience of the State, into a statute which would enable the auditor to do gross injustice to some sureties, and to confer great pecuniary favors on others according to his pleasure. The law can not be so interpreted. If this were its meaning, its constitutionality would be to say the least doubtful. But it can not be so interpreted

1879
Special Term.

The State
v.
Wade et al.

Syllabus 3.

In the case of *Porter* v. *Stanley*, 47 Me. 515, the court refused to permit a settlement made by selectmen with a tax collector in this manner to stand, though the collector, when such settlement was made, said if it was right he would consent thereto. The court declared such settlement inequitable, unauthorized and not binding on either the town or the sureties of the collector. And in *Readfield* v. *Shaver*, 50 Me. 37, it was held, that a collector of taxes, when he paid the same into the treasury had a right to direct it to be applied to the taxes due from either of two years in which he had different sureties on his bond.

The appellant's counsel insist that if the auditor had not this authority, nevertheless an appropriation of a portion of this payment of $4,363.58, paid January 20, 1870, and directed by the sheriff at the time of its payment to be applied to the taxes of 1869, could be and was properly applied by the auditor to the taxes of 1867 and 1868, to the relief of other sureties of the sheriff, by the authority specially conferred on the auditor by the act passed March 2, 1870. See Session Acts of 1879, ch. 89, p. 99. I do not so understand this act. It directs the auditor to apply this sum to the taxes of 1869, or " so much thereof as the auditor may be satisfied was collected out of the taxes due the State from the county of Putnam for the year 1869." But the act does not direct how that portion of this sum which the auditor should be satisfied was not collected out of the taxes of 1869 should be applied; and it was the duty of the auditor to apply it as a credit in the manner required by law, and not according to his pleasure. He actually applied $1,286.24 of this sum to the taxes due from the sheriff for 1867 and 1868, and for which taxes other sureties were bound. This was unauthorized by this act.

The counsel for the plaintiff in error insists, that " this special act made the auditor a judge whether any and, if any, how much of this payment was to be applied to the accounts of 1869 ; and his decision under this act is bind-

ing on all parties interested, and could not be reversed by the jury." To sustain this position he refers to United States v. Jones, 8 Pet. 384; Philadelphia & Trenton Railroad Co. v. Stimpson, 14 Pet. 458; 4 Rand. 432; ex parte Yearger, 11 Gratt. 655; Allen v. Blunt et al., 3 Story 742. As I have said, I think this special act is misunderstood by counsel; but if it had meant what he thinks it means, the conclusion drawn by him as to the effect of the auditor's act would not be justified. The authorities cited only prove that if the legislature commits to an officer the authority and imposes on him the duty of deciding certain points or matters, the act of such officer cannot in certain cases be reviewed by any other tribunal. But in this case the rights of the sheriff and his sureties were determined and settled by law, on the 26th day of January, 1870. The sureties in the official bond of the sheriff dated July 24, 1870, became on that day clearly entitled to this credit of $4,363.58. The Legislature clearly had no power to divest these sureties of this vested right, and on March 2, 1870, by an act of the Legislature deprive them of any portion of this credit and give it to other sureties. Had they done so, the act would have been unconstitutional. It would in effect have been depriving them of their property without due process of law. And as they could not do this, they could not confer power on the auditor, an executive officer, to do this. His attempt to do this must therefore be regarded as amounting to nothing; and the rights of the sureties of the sheriff can be in no manner affected thereby.

Syllabus 4.

The question, whether the condition of the bond of July 20, 1869, was, as the law then stood, sufficient to bind the sureties for taxes collected by the sheriff, which he failed to pay over will not be here considered, as in this case there was no such failure.

I am therefore of opinion that the judgment of the circuit court of December 22, 1877, must be affirmed.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.