# CHARLESTON.

STATE, *which sues, etc.* v. TURNER *et al.*

Submitted September 9, 1919.   Decided September 16, 1919.

SHERIFFS AND CONSTABLES—*Bond—Defalcation—Liabilities of Sureties—Default.*

In an action brought against the sureties on a new official bond, executed by a sheriff pursuant to an order of the county court, to recover balances found to be due the various public funds on final settlement made after his term of office has ended, the sureties on such new official bond, not being liable for defalcations occurring prior to the taking effect of the new bond, are entitled to show that the embezzlement of the public moneys occurred before that event, if that is the fact, and they are entitled to set up this defense by a special plea if they so desire.

POFFENBARGER, JUDGE, absent.

Case Certified from Circuit Court, Mason County.

Action of debt by the State of West Virginia, suing for the use of the County Court of Mason County, against H. C. Turner and others. Plaintiff's objection to the filing of defendant's pleas overruled, and the pleas allowed to be filed, and the question of the right to file such pleas certified.

*Affirmed.*

*Rankin Wiley* and *Musgrave & Blessing,* for plaintiff.

*B. H. Blagg, Somerville & Somerville,* and *John L. Whitten,* for defendants.

WILLIAMS, JUDGE:

This is an action of debt brought by the State of West Virginia for the use and benefit of the County Court of

Mason County against the surviving sureties on one of the official bonds given by John P. Austin, now deceased, as sheriff of said county.

The term of office for which said sheriff was elected began January 1, 1909, and ended December 31, 1912. Prior to entering upon the duties of said office he gave the bond required by law with the Citizens Trust & Guaranty Company as his surety. On the 17th day of July, 1911, he was required by an order of the county court, entered of record, to give a new bond, and gave the bond now sued on.

Defendants tendered and asked leave to file three special pleas, Nos. 4, 5, and 6, averring, in effect, that the fund for which the surities are now sought to be held liable was misapplied or embezzled by their principal prior to the time they became his sureties. Plaintiff objected to the filing of these pleas, but the court overruled the objection and permitted them to be filed, and, at the request of the attorneys for the respective parties, certified the question of the right to file these pleas to this court for its determination.

It is averred in the declaration that the defendant sheriff made annual settlements with the county court during his term of office, and that each settlement showed the balances then due the several funds of which the county court had control for each successive year; that such balances were carried over and charged against the sheriff in his settlement for the succeeding year, and so on, until the final settlement made the 12th day of August, 1913, when it was ascertained that there were certain balances in his hands due the various funds, aggregating $24,825.05, which he was directed by order of the court entered of record, and of which he had notice, to turn over to F. E. Bletner, his successor in office. It is also alleged that he failed and refused to comply with this order.

It is contended by counsel for plaintiff that, in view of the statute, section 38, chapter 39, Code 1918, forbidding the sheriff to pay any money out of the county treasury "except upon an order signed by the president and clerk

of the county court, and properly endorsed as aforesaid, or
upon judgment or decree, as provided by the forty-second
section of this chapter,'' the alleged default did not occur
until the 12th day of August, 1913, when he was ordered
to pay the money over to his successor and failed to do so,
and that, therefore, the liability of the sureties on his of-
ficial bond then in force is determined as of that time, and
that consequently the pleas set up no defense. *State* v. *Wade,*
15 W. Va. 524; *State* v. *Parsons,* 22 W. Va. 580; *State* v.
*Hays,* 30 W. Va. 107; and *State* v. *Keadle,* 63 W. Va. 645,
are cited to sustain this contention. It is true that such an
order of the county court and the failure of the sheriff
to comply therewith shows a default, and constitutes a condi-
tion precedent to the right to sue the sheriff on his official
bond. Hence, an averment to that effect, or that a judg-
ment or decree has been rendered against the county court
for a certain sum of money, is essential to the maintenance
of an action on a sheriff's official bond. A breach of his
official duty is unquestionably shown by his failure to comply
with the order of the county court. But when the con-
flicting rights and liabilities of different sets of sureties are
involved, such order is not conclusive evidence of the time
when the embezzlement actually occurred, and the sureties are
permitted to show that it occurred at a time before the bond
on which they are liable became operative. We, in effect,
so held in *Raleigh County Court* v. *Cottle,* 79 W. Va. 661.

Being the sureties on the new bond given by their princi-
pal, defendants are, by section 20, chapter 10, Code 1918,
made liable only for the default of their principal occurring
after the approval of that bond, and, if the default con-
templated by the statute could occur only when the sheriff
is ordered to pay the fund over to his successor in office and
fails to do so, the provision limiting liability of the sureties
to such default only as occurs after the approval of the
new bond would be useless, because the sheriff is the treasurer
of the county funds and is entitled to the custody thereof
until his term of office ends, and he would never be ordered
by the county court to pay over any balance in his hands
for any fiscal year until the end of his term, and hence

it would follow that the sureties on the new bond last given by a sheriff would always be liable for the balance found on last settlement. Clearly it. was the purpose of the legislature, in case a sheriff gives a new bond, to make the sureties thereon liable for such malfeasance only as occurs within the time such bond is in force. It is not alleged here that the new bond was retrospective, and unless made so by its terms the law does not give it that effect. The term "default", occurring in section 20, chapter 10, Code, in the phrase "for any default of their principal occurring after the approval of such additional bond," relates to and includes the time when the malfeasance was actually committed, as well as the default that may be shown by the officer's failure to comply with the order of the county court made after final settlement after the ending of his term, and the sureties on the new bond have a right to prove, if they can, that the malfeasance occurred before they became liable. As we interpret the decision in *State* v. *Wade, supra,* it supports rather than conflicts with our present holding. There the sheriff had given two new offiical bonds, one July 24, 1869, and the other the 15th of March, 1870, with different sureties. On January 24, 1870, he paid into the treasury nearly three-fourths of the taxes for the year 1869 and directed the auditor to apply the funds to. the taxes of 1869. But the sheriff being then delinquent for the taxes of 1867 and 1868, the auditor disregarded his instructions and caused the fund to be applied on the delinquent taxes of 1867 and 1868, claiming the right to do so under the statute. The legislature then passed a special act, at the instance of the sheriff and his sureties, directing the auditor to apply the payment to the taxes of 1869, or so much thereof as the auditor was satisfied was collected out of the taxes due the state for 1869. The court held that the auditor had no right to disregard the sheriff's instructions, and furthermore, that inasmuch as only three-fourths of the taxes of 1869 were required to be paid into the treasury prior to May 1, 1870, the sureties in the first bond were liable for three-fourths of the taxes of 1869, and the sureties in the second bond, for the remaining one-fourth.

That a sheriff may, by directing the application of public funds under his control to the payment of a particular indebtedness thereto, affect the liability of his sureties is well settled. *Taylor* v. *LaFollette,* 49 W. Va. 478, and cases cited in the opinion. But that question is not raised by the pleading here.

It may be that defendants are entitled to prove the facts averred in their special pleas, under the issue raised by the plea of conditions performed, but this question we do not decide, as we lately held in case of *First National Bank* v. *Freeman,* 83 W. Va. 477, 98 S. E. 558, that notwithstanding the facts alleged in a special plea may be proven under the general issue, nevertheless a defendant has the right to plead them specially if he so desires. We therefore sustain the ruling of the lower court and direct our decision to be certified back to it.                          *Affirmed.*