# WHEELING.

## STATE, for use, *v.* HAYS.

Submitted June 14, 1887.—Decided June 29, 1887.

| | |
|---|---|
| 30 | 107 |
| 41 | 783 |
| 30 | 107 |
| 44 | 239 |
| 30 | 107 |
| 51 | 28 |
| 51 | 219 |
| 30 | 107 |
| f63 | 648 |
| 30 | 107 |
| e65 | 489 |

1. SHERIFF—ACTION ON BOND—PLEADING.

   A declaration in an action upon a sheriff's official bond for the use of the County Court of his county, for failing to pay over money received by him in his official capacity for the use of such county, which fails to aver, that before such action was commenced, the County Court had, by its order entered of record, or by a draft made in pursuance thereof, ordered him to pay such moneys to his successor in office, or to some other person, and that said sheriff had notice thereof, is, upon general demurrer, fatally defective. (p. 114.)

2. SHERIFF—LIABILITY TO COUNTY—DEMAND.

   A sheriff whose term of office has expired, having in his hands moneys belonging to the County Court of his county, is not liable to be sued therefor, until such County Court, by some order entered of record, or draft made in pursuance thereof, directing him to pay the same to his successor in office, or to some other person, has been presented to him for payment, and payment thereof has been refused. (p. 117.)

3. SHERIFF—PLEA—CONDITIONS PERFORMED.

   In an action of debt upon a sheriff's official bond, the plea of conditions performed, properly pleaded, is an answer to the whole

cause of action in the declaration mentioned, and controverts the plaintiff's right to any recovery whatever.  (p. 113.)

4. APPEAL—PRACTICE—JURISDICTION.

Where the members of this Court are equally divided on the question of jurisdiction, the jurisdiction must be sustained, and the case decided on its merits.  (p. 122.)

Statement of the case by WOODS, JUDGE:

This is an action of debt in the Circuit Court of Gilmer county, in the name of the State of West Virginia, suing for the use of said county, against Samuel L. Hays, its late sheriff, and other defendants, who were his sureties on his official bond, to recover certain moneys alleged to be due the county from Hays, which, as such. sheriff, he received and failed to account for. The declaration contains a single count, but sets out two breaches of the condition of his official bond, which are in all material points, of the same legal effect. After setting forth the execution of the bond by the defendants, and the condition thereto annexed, in the usual form, the plaintiff averred, that the said Samuel L. Hays did not faithfully discharge the duties of his office as sheriff, but therein made default; and for assigning a breach of the conditions of the bond the plaintiff averred that, on and after the fourteenth of August, 1877, and during his continuance in the office of sheriff of Gilmer county, the said Samuel L. Hays collected and received, for the use of said county, taxes and other moneys, particularly specified in the declaration, " with all of which the said Samuel L. Hays, as such sheriff, was charged in the settlements made by him with the County Court of said county pursuant to law, all of which settlements were approved by the said court, and directed to be recorded as required by law, and by the last of which, to wit, by the settlement made by and with said Hays as of the twenty sixth November, 1881, approved, confirmed and directed to be recorded, as required by said court by an order entered sixth December, 1881, on account of moneys that went into his hands, and with which he was chargeable as such sheriff, on account of moneys for the general purposes of the county, on account of the poor fund, on account of the road funds, balances were ascertained to be due from the said Samuel L. Hays to the said county, and on account of

the funds aforesaid, as of the twenty sixth November, 1881, with interest as follows, to wit, on account of moneys due to the county for general purposes as aforesaid, on account of county levies, and other moneys for the use of the county, $2,592.09; and on account of the poor fund, $618.33, with interest on each of said sums from the twenty seventh day of August, 1881; on account of the road funds,—for Center district, $59.96; for De Kalb district, $17.60; for Troy district, $58.20; for Glenville district, $26.51; and on account of road fines,—for Center district, $10.41; for Glenville district, $50.93; and for Troy district, $54.91, with interest on said road funds and fines from the first day of January, 1881, until paid. And being so indebted to the County Court of Gilmer county in the several sums of money aforesaid, with interest thereon as aforesaid, the said Samuel L. Hays, though often requested, did not, nor did any one for him, pay to the County Court of Gilmer county, or to Hugh McQuain, the sheriff and *ex officio* treasurer of said county, successor in office to said Samuel L. Hays, or to any person or officer authorized to receive the same, the said several sums of money, and interest thereon as aforesaid, or any part thereof, but to pay the same, or any part thereof, wholly failed and refused, and still doth refuse. And so the plaintiff says, that by reason of the breaches of the condition, above assigned, as aforesaid, the said bond became and was forfeited, and thereby an action hath accrued to the plaintiff to demand and have of the defendants the sum of $30,000.00, first above demanded, yet the said defendants have not, nor has either of them, paid to the said plaintiff, or to the County Court of Gilmer county, or to the sheriff or *ex officio* treasurer of said county, the said sum of $30,000.00, first above demanded, but to pay the same they, and each of them, have refused, and still refuse, to the plaintiff's damage $10,000.00," etc.

The defendants craved oyer, of the bond and the condition thereto, and demurred generally to the declaration, in which the plaintiff joined. The defendants also pleaded conditions performed, *non damnificatus*, and payment, to which the plaintiff replied generally, and issues were thereon joined, and the defendants were required to file a statement of their defence, with specification of pay-

ments and set-offs, at least 30 days before the next term, at which term the defendants tendered their specification and sets-off, which, without interest, amounted to $1,020.54, and also filed the affidavit of said Hays,—stating that he was entitled to other credits and sets-off against the demands sued for, to the amount of $1,500,—the particulars of which he was not then able to specify, and thereupon moved the court to continue the cause on the ground of the absence of his counsel, which motion the plaintiff resisted; and the court being of opinion that the defendants were entitled to a continuance of the cause as to all *controverted matters* therein shown by the statement of difference and notice of sets-off and payments, on motion of the plaintiff, entered judgment against the defendants for $1,000, with interest from the fifteenth of February, 1883, and costs, and continued the cause as to all other matters arising therein. To this judgment the defendant, Samuel L. Hays, has obtained from this Court a writ of error and *supersedeas*.

*W. G. Bennett* for plaintiff in error.

*Linn & Withers* for defendant in error.

WOODS, JUDGE:

To the foregoing judgment, four grounds of error are assigned,—(1.) In overruling the demurrer to the declaration. (2.) In rendering against the defendants the judgment of $1,000. (3.) In overruling their motion to continue the cause as to said $1,000. (4.) In rendering judgment without evidence upon inspection of the declaration and statement of set-offs, and affidavit of the defendant Hays.

The first question presented for consideration is whether this Court has jurisdiction to review by writ of error the judgment complained of. If this judgment is not a final judgment, within the meaning of the first clause of the first section of chapter 135 of the Code, this writ of error must be dismissed as having been improvidently awarded, although the defendant in error has neither suggested nor argued such objection. So much of said chapter as affects the question of jurisdiction in this case, is as follows: "A party to a con-

troversy in any Circuit Court may obtain from the Supreme Court of Appeals, or a judge thereof in vacation, a writ of error or *supersedeas* to a judgment or decree of said court, in civil cases where the matter in controversy, exclusive of costs, is of greater value or amount than one hundred dollars, wherein there is a *final judgment* or decree." It is admitted that, at common law, the court, in any given case, could pronounce but one judgment possessing this character of finality, for its *judgment* was the end of controversy as to the whole cause of action. There was an apparent exception to this well-established rule, allowed in actions where all the defendants were *jointly* liable. In such action, all the defendants had the right at any time to appear in court, in term, and confess judgment for the whole of the plaintiff's demand, but less than *all* of the defendants could not do so, for his right to a joint judgment, against all who were jointly liable, was perfect, and he could not without his consent be deprived of this right by part of the defendants appearing in court and confessing judgment, even for the *whole*, much less for a *part* of his demand. Sometimes, however, one of the defendants, not desiring to resist the plaintiff's demand, was willing to acknowledge the plaintiff's action as to him, leaving the other defendants to carry on the controversy. In such case, even a formal judgment, upon such confession against the party making the same, was in fact *no judgment*, for it was liable to be diminished or wholly set aside, by the judgment which might be entered upon the verdict rendered on the trial of the issues made by the other defendants; because, in such case, the common law required that the same judgment should be entered against all of the defendants. *Snyder* v. *Snyder*, 9 W. Va. 415; *Hoffman* v. *Bircher*, 22 W. Va. 537; *Jenkins* v. *Hurt*, 2 Rand. (Va.) 446; *Taylor* v. *Beck*, 3 Rand. (Va.) 316; *Peasley* v. *Boatwright*, 2 Leigh 196; *Early* v. *Clarkson*, 7 Leigh 83. There was no authority to enter a judgment in favor of the plaintiff, even upon confession of all the defendants, for less than the whole of his demand, unless the plaintiff accepted such confession of part, and discontinued his action as to the residue; for, as but one judgment could be entered in the cause, he could not prosecute a demand for which no judgment could be en-

tered.  Such continued to be the law of Virginia, until the adoption of the Code of 1849, when this common-law rule was changed by section 8 of chapter 172, which is identical with section 8 of chapter 126 of the Code of West Virginia. This section is in these words : "If the defendant file a plea or account of set-off, which covers or applies to a part of the plaintiff's demand, judgment may be forthwith rendered for the part not controverted and the costs accrued until the filing of the plea or account, and the case shall be proceeded with for the residue, as if the part for which judgment was rendered had never been included therein.   And if, in addition to such plea or account, the defendant pleads some other plea going to the whole, or residue of the demand, the case shall not be continued as to the part not controverted by plea or account of sets-off, unless the additional plea be also verified by affidavit, or good cause be shown for such continuance."

To me it seems perfectly clear that the sole purpose of this enactment was to change the common law, so that in all actions where, but for such plea or account of sets-off, the plaintiff would be entitled to a judgment for specific personal property, or for a certain sum of money, it should thenceforth be lawful for the plaintiff to demand, and for the court to render in his favor, a judgment for such part of his claim or demand as the defendant by his plea or account had failed to controvert, and thus place the same beyond all controversy, in the same manner, and to the same extent, as if it had never been included therein ; and I am unable to conceive how this purpose could have been more clearly expressed, than by the terms used in this section of the statute.

This judgment, so rendered for the uncontroverted part of the plaintiff's demand, bears no analogy to the judgment entered upon the acknowledgment of one of the defendants, jointly bound with other defendants, who still continue to resist the plaintiff's demand ; for, as I have already shown, such a judgment is in fact no judgment, for it possessed neither conclusiveness nor finality, for it was liable to be diminished or wholly set aside, by the result of the trial of the issues with the other defendants.   But, under the provisions of section 8 of chapter 126; the judgment so rendered

for the uncontroverted part of the plaintiff's demand can never be diminished by the result of the trial as to the residue thereof. The amount for which such judgment has been rendered has passed out of the controversy, as effectually and completely as "if it had never been included therein," and is therefore of necessity *final* and conclusive between the parties. *Quoad hoc*, it is the end of controversy, and nothing remains to be done, except to carry the same into execution. For these reasons I am clearly of opinion that the judgment complained of is to all intents and purposes a *final judgment*, and may be reviewed by writ of error or *supersedeas*.

To the plaintiff's action appear to have been pleaded three pleas, viz.: "*Non damnificatus*," "conditions performed," and " payment," accompanied with a specification of the several items of payment and sets-off which they desired to prove on the trial, but it does not appear that any of them was verified by affidavit, as required in certain cases specified in section 8 of chapter 126 of the Code. The pleas themselves are not set out in the record, but as they were neither demurred to, nor otherwise objected to, and as issues were joined on all of them, we must presume they were in proper form.

The plea of " *non damnificatus*," if it had been objected to, would have been rejected, as it presented no ground of defense to the action, as the condition of the official bond of the sheriff on which the action was founded was in no proper sense a bond of indemnity.

The plea of "payment," which in form was an answer to the whole declaration, was, in effect, by the specification of partial payments and sets-off accompanying it, narrowed down to an amount less than one third of the sums in the declaration demanded.

The plea of " conditions performed " was also an answer to the whole declaration, and controverted the plaintiff's right to any recovery whatever. It was in effect an averment, that Samuel L. Hays had accounted for, and paid over to, the said County Court of Gilmer county, all moneys collected by him for its use, or for which as such sheriff he was in any manner liable. While it is true that the plea of conditions

performed admitted the execution of the official bond in the declaration mentioned, it did not admit, but in legal effect denied, that the said sheriff had in any manner failed to perform the condition thereof, for the breach of which this suit is brought.

It is insisted in argument by the counsel for the plaintiff in error, that the court had erred in overruling his motion for a continuance of the cause as to the $1,000,—which was uncontroverted by his plea of payment and the specifications of payments and sets-off filed with it. The continuance was asked for upon the sole ground, that defendant's counsel was absent, but, so far as this record shows, no reason was disclosed why he was not present, or that, if he had been present the defendants desired to further controvert the said $1,000. The mere absence of counsel, except under special circumstances, such as that he has suddenly been taken ill, or that he has met with some accident, or that he is necessarily absent in the public service, and has thereby been prevented from attending the court, affords no ground for a continuance. But if their counsel had been present, the defendants would not have been entitled to a continuance of the cause as to the $1,000, except for good cause shown, because the plea of conditions performed, which controverted the plaintiff's whole cause of action, had not been verified by affidavit as required by section 8 of chapter 126 of the Code. The Circuit Court therefore did not err in refusing to continue the cause as to the sum of $1,000, for which it gave judgment.

Did the court err in overruling the demurrer to the declaration? By chapter 39 of the Code, § 32, the sheriff is declared to be " *ex-officio* treasurer of the county, and all money collected or received for the use of the county or districts shall be paid to the sheriff to be kept and disbursed by him for county and district purposes, under the regulations prescribed by law." By section 34 the sheriff is required, at the end of every fiscal year, to render to the County Court of his county, whether especially requested or not, a full statement of his account for that fiscal year, showing the balance due by or to him at the commencement of the account, the amount collected during the year, and from what sources, and the

date and amount of every county order paid, and to whom paid. These accounts, when correct, or when corrected by the court, are required to be approved by it and recorded. Before making any such settlement, he is required to return and file a written statement of every draft, order, or claim paid by him, for which he claims credit, and of the *true* amount actually and in good faith paid by him thereon, and to verify the same by his affidavit, the false making of which is declared to be perjury. By section 38 of the same chapter the sheriff is expressly forbidden to pay any money out of the county treasury, except upon an order signed by the president and clerk of the County Court, and properly indorsed, or upon judgment or decree as provided for in the forty second section of that chapter; and by the thirty sixth section it is declared that no order shall be drawn on the county treasurer, unless authorized by a special order or appropriation of the County Court, except to pay any bond, note, or written evidence of the debt of the county, or any instalment of interest payable thereon, or payment of salaries at fixed intervals.

Similar provisions are found in section 46 of chapter 45 of the Code, in regard to the collection and disbursement of school moneys by the sheriff on behalf of boards of education. The board of education of St. George district, in the county of Tucker, having settled with Parsons, the outgoing sheriff, and ascertained that large amounts of school moneys belonging to it remained in his hands, by an order entered upon the record of its proceedings, signed by its president and secretary, directed him to pay the same to his successor in office, A. C. Minear, then sheriff of that county, and caused a certified copy of said order to be delivered to Parsons, but did not draw any order upon him directing him to pay the same to Minear. Failing to pay the money as directed, the board of education proceeded against Parsons, and his sureties, as sheriff, by motions to enforce payment of the money remaining in his hands. After setting forth every other necessary fact, the motions particularly recited and set out the adoption by the board, and the entry on its records, of the said order directing Parsons to pay over said moneys to Minear, and the delivery to Parsons of a certified copy of said order,

but the Circuit Court quashed the notices and dismissed the motions. Upon a writ of error this Court reversed the judgment, and held, that " it was the duty of an ex-sheriff, who has in his hands money belonging to the board of education of a district in the county, upon the demand of said board, by an order made and signed by its president and secretary, and delivered to him, requiring him to pay such moneys to the present sheriff and treasurer of the board,—to pay the same upon such order, unless he has legal grounds for refusing to pay the same." *Board, etc.*, v. *Parsons*, 22 W. Va. 308, 314. In these cases this Court said: " While it is the sheriff's duty to settle up his business and honor all drafts made upon him while he is treasurer, yet it is clearly his duty, at the end of his term, upon the order of the board to whose credit the money stands, to pay it to the sheriff, who is their treasurer, so that the board may make proper orders thereon. In this case such an order was made, and served upon the late sheriff, and unless he could show, that he did not owe the money, or had legally disbursed the same, or, that there was some other legal reason why he should not do so, it was his duty to pay it."

It will be perceived that the right of the plaintiff to maintain its motions rested upon the fact that the board of education, by its order entered of record, signed by its president and secretary, a certified copy of which had been delivered to him, had directed Parsons to pay said moneys to Minear, the then sheriff of the county. That this Court in the absence of such averment in the notice would hold the same as insufficient to warrant a judgment thereon against the sheriff, clearly appears by its decision in the case of *Board, etc.*, v. *Parsons*, 22 W. Va. 580. This was a motion by the board of education of Licking district, in Tucker county, against Parsons and his sureties for school moneys due that district. The notice in this case was in all respects like the notices in the former cases, except that it wholly failed to show that any order had been made upon its books, or drawn by the board, directing Parsons to pay over the money, or that any demand had ever been made upon him for the payment thereof. The absence of such averment rendered the notice fatally defective, and this Court accordingly held, that " a notice to an

*ex-sheriff* and his sureties to recover money, which he as sheriff had collected on the school levies, which does not show on its face that the board of education which was entitled to the money *had ordered him to pay* such money to his successor, the present sheriff, and *ex-officio* treasurer, and of which he had notice, is fatally defective." In this, case the Court said : " It is right and proper, that such demand should be made upon such ex-sheriff, in this or some other appropriate manner, and the ex-sheriff notified thereof, so that the board will keep a record thereof, and that the sheriff will have a proper demand made upon him to pay the same. No such order, and no such demand, nor any order or demand, as far as the notice shows, was made in this case ; and for this reason the notice was fatally defective."

From what we have already seen, the duties of the sheriff, as the treasurer of the county, in respect to all moneys collected by him for the use of the county, are precisely similar, in every material respect, to those imposed upon him in regard to the collection and disbursement of school moneys. He is expressly forbidden to pay out any money belonging to the county, except upon the order of the County Court of such county, signed by its preisdent and clerk, except upon a judgment or decree as provided in the forty second section of chapter 39 of the Code. Until such order, or some other order, has been made by the County Court, signed by its president and clerk, directing such outgoing, or ex-sheriff to pay the money in his hands to his successor in office, or to some other person, and notice thereof given him, such outgoing or ex-sheriff has not made default in not paying over said money, for he is entitled to such order to authorize him to pay over the money to his successor in office, and to protect him in doing so; and until such order has been made and notice thereof given to him, no action can be maintained against him for failing to pay over such money.

The same reasons which controlled the judgment of this Court in the case last cited, 22 W. Va. 580, *supra*, are conclusive in the case in judgment. The declaration contains no averment whatever that the County Court of Gilmer county by any order entered of record, or by any draft drawn by its order, signed by its president and clerk, or by any

other order or demand whatever, ordered or directed the defendant, Samuel L. Hays, to pay the moneys in the declaration mentioned to his successor in office, the sheriff of said county, or to any other person whatever. Until some such order was so made by said County Court, and notice thereof given to Hays, he was not authorized to pay over said money, and therefore not liable to be sued for it. For that reason the declaration is fatally defective, and the demurrer thereto should have been sustained.

The judgment of the Circuit Court is reversed, with cost to the plaintiff in error. And this Court now proceeding to render such judgment as the Circuit Court should have rendered, it is considered that the defendants' demurrer to the declaration be, and the same is hereby, sustained, and leave is given the plaintiff to amend its declaration, if it is able and desires to do so; and this cause is remanded for further proceedings.

SNYDER, JUDGE:

I concur in the preceding opinion and the syllabus thereto except so much of the opinion as relates to the jurisdiction of this Court. I think the writ of error was prematurely awarded in this case, and that this Court has no authority to entertain it. I will briefly state my views on this question.

All judgments and decrees are either final or interlocutory. Final judgments or decrees are such as at once put an end to the action or suit. They are the ultimate and final adjustment of the whole matters in controversy, and put the parties out of court. A verdict and judgment in favor of all the defendants except one, in a joint action of trespass, is not a final judgment, and no writ of error will lie from it until the action has been abated, dismissed, or decided as to that one defendant. *Wells* v. *Jackson*, 3 Munf. 458. See, also, *Manlove* v. *Thrift*, 5 Munf. 493. A judgment for the plaintiff upon a plea in abatement, where leave is given the defendant to answer over, *respondent ouster*, is an interlocutory judgment, and such are all judgments that do not fully determine the controversy, and put the parties out of court. 3 Bl. Comm. 397; 2 Bouv. Law Dict. "Judgment;" Co. Litt.

169.  In *Cocke* v. *Gilpin*, Baldwin, J., says: "With us the right of appeal, from the foundation of the government, has been regulated by statute, and for a number of years was made to depend altogether upon the finality of the decree in relation to appeals to the Supreme Court of Appeals. Thus the acts of October, 1778, and May, 1779, establishing the Court of Appeals, and the revised act of 1792, by their plain terms require the decree or decision of the court below to be final.  The manifest meaning, *ex vi termini*, was that the cause should be terminated before its removal to the appellate jurisdiction; and the *obvious policy was to prevent the delay and expense of unnecessary and reiterated appeals.*  Appeals were not allowed from interlocutory decrees to the Court of Appeals until January, 1798, when, by an act of that date, a limited right of appeal from interlocutory decrees was introduced, which has been since continued under various modifications.  2 Rob. Pr. 421–425.  But the right of appeal from final decrees still stands upon its original footing. The result of our legislative policy on this subject has been that, as a general rule, the jurisdiction of the supreme appellate tribunal does not begin until that of the inferior court has terminated; that an appeal properly allowed brings into discussion before the appellate court all previous proceedings in the cause. * * *

It will be seen from an examination of the numerous decisions of this Court on the subject of the finality of decrees, in reference to appeals, bills of review, etc., that they have all been founded upon the idea that *a decree is not final, unless the cause itself has been thereby terminated in the court below.*  Thus, though a decree decides upon the question of title, or otherwise settles the principles of the cause, ( *Young* v. *Shipwith*, 2 Wash. Va. 300; *Grymes* v. *Pendleton*, 1 Call 54; *McCall* v. *Peachy*, Id. 55; *Bowyer* v. *Lewis*, 1 Hen. & M. 553;) though it dismisses the plaintiff's bill as to one of two separate subjects of controversy, and as to the other also determines the rights of the parties, ( *Templeman* v. *Steptoe* 1 Munf. 339;) though a decree *nisi* directs that the tract of land in the bill mentioned be surveyed. and a part thereof allotted to the plaintiff, and that the defendant shall execute to him a conveyance for such part, and pay the costs of the

suit, (*Aldridge* v. *Giles*, 3 Hen. & M. 136;) though the decree directs the defendant to pay the plaintiff hires to be ascertained by commissioners, and *to deliver up the property*, to be sold by the commissioners, and the proceeds applied to the payment of the plaintiff's claim, and the cost of the suit, and the residue, if any, to be paid to the defendant, (*Mackey* v. *Bell*, 2 Munf. 523;) though, at the suit of creditors against executors and devisees, it empowers the executors to sell such of the land held by the devisees as, after application of the testator's goods and credits, shall be necessary for the payment of his debts, (*Goodwin* v. *Miller*, 2 Munf. 42;) though it awards to the plaintiff his principal money, interests and costs, if it directs, in the event of an unproductive execution, that certain trust property shall be delivered by the defendant to the marshal to be sold, and the proceeds, after deducting a sum to be deposited for another, to be applied to the satisfaction of the plaintiff, (*Hill* v. *Fox*, 10 Leigh 587;) though, in a mortgage suit, it forecloses and directs the sale of the property, (*Fairfax* v. *Muse*, 2 Hen. & M. 558; *Ellzey* v. *Lane*, Id. 592; *Allen* v. *Belches*, Id. 595;) —yet in all these cases the decree is only interlocutory, if something yet remains to be done in the cause, and so the parties are not put out of court. · On the other hand, there is no case decided by this Court in which the decree has been held final, where the judicial action of the court in the cause has not been exhausted." 1 Rob. (Va.) 36–38. It was decided in *Ryan* v. *McLeod*, 32 Grat. 367, that "a decree cannot be in part final and in part interlocutory in the same cause, for and against the same parties, who remain in court." In the opinion in that case, the court says: "According to the uniform decisions of this court, a decree which disposes of the whole subject, gives all the relief that is contemplated, and leaves nothing to be done by the court, is only to be regarded as final. *Vanmeter* v. *Vanmeters*, 3 Grat. 142; *Harvey* v. *Branson*, 1 Leigh 108. On the other hand, every decree, which leaves anything in the cause to be done by the court, is interlocutory as between the parties remaining in the court." 32 Grat. 376; *Fleming* v. *Bolling*, 8 Grat. 292; *Ambrouse* v. *Keller*, 22 Grat. 769, 774; *Battaile* v. *Maryland Hospital*, etc., 76 Va. 63,

In chancery cases the right of appeal is expressly given by statute, both in Virginia and this State, from certain interlocutory decrees specified in the statute; for instance, from a decree "requiring money to be paid or real estate to be sold, or the possession or title of property to be changed, or adjudicating the principles of the cause." Section 1, chapter 157, Acts 1882; section 2, chapter 182, Code (1860) of Virginia, p. 745. So also in actions at law, the statute has modified the general and established doctrine by allowing writs of error from interlocutory judgments, in certain specified cases. The only cases of this kind are: "Where there is a judgment or order quashing or abating, or refusing to quash or abate an attachment," and "where there is an order granting a new trial or rehearing." In all other cases appeals and writs of error are allowed only in cases wherein there is a *final judgment* or decree or order. Section 1, ch. 157, Acts 1882, p. 505.

The case at bar comes within none of these exceptions, and must therefore of necessity come under the general provision of the statute, which authorizes a writ of error only after there has been a final judgment. The judgment here is certainly not final; for, as we have seen, a final judgment or decree (and there is no difference between a judgment and a decree, in respect to the question of finality,) is one which leaves nothing to be done by the court in the case, and puts the parties out of court. Here the parties are not only not put out of court, but the controversy is continued in the court between the same parties. There can not be two final judgments in the same action between the same identical parties,—such a thing is a legal solecism. It is certain, that when the controversy, still pending between the parties in the Circuit Court, is ultimately determined, the result will necessarily be a final judgment; therefore, if the judgment from which this writ of error is taken is also final, then we have the impossible result of two final judgments, between the same parties, in the same action.

It is altogether foreign to the subject to refer to the common law in respect to the jurisdiction of this Court. Our jurisdiction is wholly statutory, and no appeal or writ of error can be entertained by this Court, unless the same is

authorized by statute. *Hill* v. *Als*, 27 W. Va. 215. Where the statute, fairly interpreted, does not authorize the appeal or writ of error, the same will be denied or dismissed as improvidently · awarded. *Laidley* v. *Kline*, 21 W. Va. 21; *Childs* v. *Hurd*, 25 W. Va. 530. Therefore, where a party invokes the jurisdiction of this Court, it is incumbent upon him to produce the statutory authority upon which that jurisdiction is founded. He must put his finger upon the provision of the statute which authorizes this Court to take jurisdiction of his particular case. It is admitted, that there is no such authority for the writ of error in this case, unless the judgment from which it is taken is a final judgment. That it is not such a judgment, we think we have already sufficiently demonstrated by what has preceded. If this writ of error is entertained, then, when the case is finally decided, there may be another writ of error, and thus there may be two writs of error from different and successive judgments, in the same action, between the same parties, and by the same party. This would not only be unauthorized by the terms of the statute, but it would contravene the long established and settled policy of the Legislature, which is, as we have seen, to prevent the delay and expense of unnecessary and reiterated appeals and writs of error.

For the reasons thus briefly stated, I am of opinion, that this Court has no jurisdiction to entertain this writ of error, and that the same should be dismissed as having been prematurely and improvidenly awarded. I am authorized to add, that Judge Green concurs in these views and this conclusion. But since the Court is equally divided on the question of jurisdiction, the writ of error can not be dismissed, but the judgment of the Circuit Court must be reversed for the reasons stated in the opinion of Judge Woods.

REVERSED.