# CHARLESTON.

STATE FOR USE OF BOARD OF EDUCATION OF WILLIAMS
DISTRICT v. W. H. CARFER *et al.*   *(Reversed).*

STATE FOR USE OF BOARD OF EDUCATION OF PARKERSBURG
INDEPENDENT DISTRICT v. W. H. CARFER *et al. (Reversed):*

STATE FOR USE OF COUNTY COURT OF WOOD COUNTY v.
W. H. CARFER *et al.*   *(Reversed).*

STATE EX REL W. S. HALLANAN, STATE TAX COMMISSIONER
v. W. H. CARFER *et al.*   *(Affirmed).*

Submitted February 4, 1919.   Decided February 11, 1919.

1.  SHERIFFS AND CONSTABLES—*Settlement with Commissioners—Suit
    to Recover Balance—Conditions Precedent.*

    Suit to recover balances · found due from an outgoing sheriff
    in his final settlement with the commissioners appointed for the
    purpose cannot be maintained until he has first been served with
    an order directing him to turn over such balances to his successor
    in office.   One of the purposes of such notice is the protection of
    such outgoing sheriff by giving him authoritative information as
    to the proper party to receive the public funds.   (p. 333).

2.  ·TAXATION—*Settlement with Commissioners—Mistakes—Suit for
    Balance—Conditions Precedent.*

    Where, however, the sheriff had made his final settlement with
    commissioners appointed for the purpose, as required by law,
    and has accounted for the balances thus found to be due from
    him, and, by an audit subsequently made by the tax commissioner,
    mistakes are found in such settlement which render such outgo-
    ing sheriff liable to some of the fiscal divisions whose funds he
    has theretofore handled, it is not necessary, before bringing a
    suit ǀto recover the amount so found due from him because of
    such errors, that an order be served upon him requuiring him to
    pay the amount thereof to his successor in office.   (p. 335).

3.  SAME—*Accounts of Sheriff—Mistakes and Omissions—Suit for
    Balance—Conditions Precedent.*

    Where after the expiration of the term of office of a sheriff,
    and after he has settled his accounts with the commissioners ap-
    pointed for the purpose, as required by law, and has paid over
    the balances so found to be due by him, an audit is made of his
    accounts by the tax commissioner, and either because of a mis-
    take therein, or of an omission of some item therefrom, it is found

83 W. Va.

that such sheriff is indebted to some or all of the fiscal divisions for which he formerly held the funds, and he denies the validity of such claim or claims, and refuses to recognize the same, there is no necessity, as a prerequisite to the maintenance of a suit to recover the amount thereof, that he should be served with a copy of an order requiring him to pay over the same to his successor in office.    (p. 335).

4.    SAME—*Accounts of Sheriff—Audit—Suit for Balance—Statute.*
    Under the provisions of § 7 of ch. 10B of the Code the tax commissioner has authority to audit the accounts of a sheriff and ex officio treasurer of a county, and in case errors are found therein which, according to the report of such audit, render such sheriff liable to the county, or some other fiscal division, it is the duty of the tax commissioner to file a copy of such audit with the legal authority of the taxing body, and in case such legal authority fails to institute a suit within a reasonable time to enforce the collection of the amounts shown to be due by such audit, the tax commissioner has power to institute a plenary suit in the name of the fiscal division to which such balance belongs to recover the same, or in case the proper legal authority does institute such suit, but fails to diligently prosecute the same to a conclusion, such tax commissioner has authority to participate in the prosecution of such suit to a speedy and final determination.    (p. 337).

5.    SAME—*Suit    Against    Sheriff—Conditions    Precedent—Copy    of    Audit.*
    As a prerequisite to the institution of such suit at the relation of the tax commissioner, it must appear that a copy of the audit from which it is claimed the indebtedness sought to be collected appears shall be filed with the legal authority of the taxing body, and where in a suit so brought at the relation of the tax commissioner the declaration does not show that a copy of such audit has been furnished to the taxing body or to the legal authority thereof, a judgment sustaining a demurrer to the declaration will be affirmed.    (p. 337).

6.    ACCOUNT—*Settlement—Mistake—Action at Law—Surcharge.*
    An indebtedness arising because of a mistake made in the settlement of accounts which does not involve the restatement of such accounts, or which arises from the failure to include in such settlement a proper item, may be recovered in an action at law without resort to a suit in equity to surcharge and falsify the settlement.    (p. 339).

Error to Circuit Court, Wood County.

Separate suits by the State for Use of the Board of Education of Williams District, the Board of Education of Par-

kersburg Independent District, and the County Court of Wood County, and suit by the State, on the relation of W. S. Hallanan, State Tax Commissioner, against W. H. Carfer and others. Demurrer to declarations in each case sustained, and a judgment of dismissal entered, and plaintiff in each case brings error.

*Reversed and remanded.*

*James S. Wade* and *Jno. T. Simms*, for plaintiffs in error.
*F. P. Moats* and *Merrick & Smith*, for defendants in error.

RITZ, JUDGE:

The defendant W. H. Carfer was sheriff of the county of Wood for the term of four years beginning on the first day of January, 1905. He gave his official bonds as such sheriff and ex officio treasurer for the county and the respective school districts. The declaration in each of these cases avers a breach of the conditions of such bonds, in that the said Carfer failed to account for interest collected by him on taxes which came into his hands, and which fact was discovered by an audit made under the supervision of the state tax commissioner. The declarations do not aver when this audit was made, but it is averred that a copy thereof was filed with the county court in April, 1911, so we are justified in assuming that the audit was made in the year 1911, more than two years after the expiration of Carfer's term of office. It is further averred that in each instance the county court of Wood county called upon Carfer to pay the balances found by the audit to the school districts, the county, and to the state, but that Carfer declined and refused to do so, and in October, 1917, the county court and the school districts, having failed to institute suits for the purpose of collecting the alleged balances, the said tax commissioner brought these suits for that purpose. A demurrer to each of the declarations was sustained, and the plaintiff not desiring to amend a judgment of dismissal was entered.

It is first contended that the declarations are bad on demurrer because they do not allege that prior to the institution of these suits an order was entered by the county court of

Wood county, and by the boards of education interested, and a copy thereof served upon Carfer requiring him to pay over to his successor the balances claimed. The cases of *State* v. *Parsons,* 22 W. Va. 309; *State* v. *Parsons,* 22 W. Va. 580; *State* v. *Hays,* 30 W. Va. 107; and *State* v. *Keadle,* 63 W. Va. 645, are relied upon as supporting this contention. The plaintiff contends that those decisions are wrong in principle and should be overruled by this Court. The major portion of the argument for the plaintiff is devoted to these decisions, and counsel very exhaustively and learnedly argues that the same should be overruled, insisting that they are wrong in principle, and that their effect is mischievous. We cannot agree with this conclusion. The principle announced in those opinions has stood as the law of this state for many, many years, well understood and recognized by all fiscal bodies since it was first announced. The legislature has had occasion several times since the pronouncement of that doctrine to amend and re-enact the fiscal legislation of the state, but notwithstanding this fact it has not seen fit to alter the law as proclaimed by the decisions complained of. It is nothing but a rule of procedure, and so that it is well understood and is not difficult of enforcement, it would perhaps be very much less mischievous to permit the rule to remain unchanged than it would to subject it to modification or alteration to suit the particular views or idiosyncrasies of each particular judge who might be called upon to administer the law. But we cannot agree that these decisions are not based upon sound reason. When properly analyzed they say no more than that when a sheriff retires from office with balances in his hands, as shown by his settlements, before he can be sued for these balances he must be told by the fiscal body to which the funds belong to whom he shall pay them, while if the contention the state now makes is sustained the sheriff would have to ascertain this fact at his peril. The county courts and boards of education own and control these funds, and it imposes no onerous duty upon the owner of money in the custody of a public officer to require him to inform the officer authoritatively to whom he desires it paid when such officer's functions cease. This requirement is not only for the protection

of the funds themselves, but it offers protection to the retiring officer; it relieves him of the responsibility of determining to whom he must account and pay over the balances found by his settlements. The fiscal bodies have means of information very superior to those possessed by the sheriff for determining the proper party to hold the funds. The county court, not only canvasses the returns and declares the result of the election of county officers, but they accept the bonds of sheriffs, and are fully informed when such incoming sheriffs have complied with the law, and qualified themselves to be the recipient of such funds. It appears from the allegations of the declarations in these cases that the defendant Carfer, while he was elected in November, and his term began on the first of January, did not give his bond until the succeeding May, more than four months after his term of office commenced. Manifestly it would have been improper to turn over large sums of money to him during that four months.

But do these decisions have any application to the situation disclosed by the declarations in these cases? We think, when read in the light of the facts upon which they are based, those decisions mean that when a sheriff retires from office and the settlement which he makes with the commissioners appointed for the purpose under the law discloses unpaid balances, he cannot be sued for such balances until he has first been directed by the fiscal body to which they belong to pay them over to some designated person, and this for the reason we have pointed out above. While it is not positively averred in the declarations that Carfer made settlement at the end of his term of office, and paid the balance found to be due from him upon the order of the various fiscal bodies to which he had to account, this inference necessarily arises from the facts alleged. It is alleged that the audit which disclosed the balances sued for in these cases was made in 1911, more than two years after the expiration of Carfer's term of office. The inference is clear that the settlements of Carfer made prior to that time did not disclose that he owed the amounts sued for in these cases. It must be assumed that when he went out of office he made his settlements as required by law, and inasmuch as it is only contended that the owes

now the balances found by the tax commissioner from an audit made two years later, it must be assumed that he paid and settled all accounts found to be due from him by the commissioners with whom he made settlement. It must also be borne in mind that when the tax commissioner ascertained the alleged balances claimed in these suits Carfer disputed the same and refused to pay them. Under these circumstances we do not think the decisions relied upon are controlling here. Where a sheriff has made his settlement with the commissioners appointed for the purpose, as we are bound to assume was done here, and has paid over the balances found to be due, and it subsequently turns out that a mistake has been made in those settlements, and that he owes an additional sum because of such mistake, or that an item has been omitted, and that he owes an additional amount because of this, there is no necessity for entering an order telling him to whom he shall pay the amount found due because of such mistake or omission. He has already made settlement of the balances found due by the commissioners; he knows who is the proper officer to receive the money because of the fact of his former settlement, and it would be an entirely useless thing to again tell him to whom he can properly pay the amount found due. We do not think the doctrine of those cases applies where the amount sought to be recovered is made up of something omitted from the settlement made with the commissioners, or exists because of a mistake made in such settlements. The reason for applying the rule laid down in the cases relied upon has ceased, and when this is so the courts will not require the doing of a vain thing.

There is a further reason why there is no necessity for a formal demand upon Carfer to pay over the balances sued for in these cases. It is alleged in the declarations that he has repeatedly refused to pay them. The allegations of the declarations are susceptible of no other interpretation but that he denies that he owes these balances; he disputes their validity; and where this is the case it would be utterly foolish as a prerequisite to bringing a suit therefor to require that a formal order be entered and served upon him requiring him to pay over to a certain party money which he claims he

does not owe, and which he has already announced that he will not pay. The entry of such an order and the service of it could have absolutely no effect or serve no purpose whatever, in view of the defendant's denial of liability. It is very much akin to those cases in which an insurance company denies liability upon a policy of insurance in which it is familiar doctrine that such denial waives the necessity for furnishing proofs of loss. What would be the use of furnishing Carfer in these cases official information upon which to act in making a settlement of these amounts found due from him when he has already declared that he does not owe them, and will not pay them?

But it is contended by the defendant that these suits cannot be maintained at the relation of the tax commissioner under the allgations contained in the declarations. The suits are brought at the relation of the tax commissioner under the authority conferred upon him by § 7 of ch. 10 B of the Code. This section confers upon the tax commissioner as chief inspector of public offices the power to audit the accounts of sheriffs or other public officers, and upon the discovery of errors therein by which balances are found to be due from them, it provides for the filing of a copy of the report with the proper legal authority of the taxing body for such action as is proper in the premises. This section also provides that refusal, neglect or failure on the part of the proper legal authority of the taxing body to take prompt and efficient legal action to carry into effect the findings of any such examination, or to prosecute the same to a final conclusion, shall give to the tax commissioner the right to institute necessary proceedings to that end. The contention of the plaintiff here is that the county court of Wood county, notwithstanding this audit has been filed with it since the year 1911, has taken no action to enforce the findings of the tax commissioner, nor have the boards of education to whom it was found balances were due, notwithstanding the prosecuting attorney, their proper legal adviser, has had a copy of the audit ever since April, 1911. It is insisted, however, for the defendant that the declaration nowhere alleges that the county court has refused, neglected or failed to carry into ef-

fect findings of the tax commissioner as shown by the audit. It is quite true the declarations do not allege in so many words that the county court and the boards of education involved are guilty of failure, refusal and neglect in that regard, but the facts shown by the allegations of the declaration are conclusive to that effect. These suits were brought in October, 1917, and the audit was filed with the county court and the prosecuting attorney in April, 1911. Thus it would seem that for more than six years no action was taken to enforce the findings of the tax commissioner's audit. Such a delay as this on the part of the officers charged with the execution of the law is a clear neglect or failure, and such as justifies the tax commissioner in moving. It is insisted, however, that even though the state of facts averred in the declarations would justify the tax commissioner in taking some action to enforce the collection of the balances found due by his report, he cannot enforce the same in these suits, the contention being that his only right and power is to bring a proper proceeding to compel the county court and the boards of education or other officers whose duty it is to act to do something, and not to bring the suit himself for the accomplishment of the purpose sought. To give to the statute under consideration that construction would be to give it a meaning which the words do not comvey. It would limit that statute unnecessarily, and in violation of the plain purpose of the legislature. The statute confers upon the tax commissioner the authority to take prompt and efficient legal action to carry into effect his findings, and to this end he may prosecute necessary proceedings, or participate in such proceedings. If he was limited to bringing a writ of mandamus to compel the proper authority to act, the language used, giving him power to participate in such proceedings, would be meaningless. Clearly the intention of the legislature was to confer upon him the right to bring a plenary suit in case of failure of those upon whom the duty rests in the first instance, and in case a suit is brought and delayed in its prosecution, the tax commissioner has the right not to prosecute a writ of mandamus to compel those charged with the prosecution of the suit to carry it on, but, by the very language of the statute, to

participate in the prosecution of it.   Clearly this statute was enacted to confer upon the tax commissioner plenary power to institute suits in the name of a fiscal division, or to participate in the prosecution of such suits where the same are unreasonably delayed.

But it is said that the court must know that under the law the defendant Carfer made a settlement with the county court at the end of his term of office.   This is quite true, and we might go further and say that inasmuch as the only amounts claimed in these declarations are balances found by the tax commissioner because of an error in those settlements, we will presume that Carfer paid over the amounts found to be due from him in such settlements.   It is therefore contended by the defendant that these suits are in the nature of suits to surcharge and falsify his settlements made with the commissioners, and this being true, equity must be resorted to for that purpose.   It may be that equity has jurisdiction to entertain a suit for the purpose, but there are many cases in which the jurisdiction of courts of equity and courts of law are concurrent, and one of those instances is where it is sought to recover an amount claimed to be due because of a mistake in a settlement or stated account.   Where the mistake is simply one in a single item, or consists of an easily ascertained amount, or arises from the omission of some item or items from the settlement which are easily ascertainable, courts of law are as competent to relieve against the error as courts of equity.   *Harman & Crockett* v. *Maddy Bros.*, 57 W. Va. 66, and authorities there cited.

What we have said, it will be noted, has peculiar application to the suits brought for the use and benefit of the county court of Wood county and of the boards of education of the two school districts.   But what about the suit brought to recover the balance claimed to be due to the State?   It is contended that the allegations of the declaration show no reason why the tax commissioner should have instituted this suit.   Under the provisions of § 1 of ch. 35 of the Code, it is the duty of the auditor to institute and prosecute suits to recover claims due the state.   The declaration in the case here does not aver that a copy of the audit made by the tax

commissioner from which the balance due the state appears was ever filed with the Auditor, or with the Attorney General, who is the state's chief legal authority, and it is urged that this being true it cannot be said that the officer whose duty it is primarily to institute the suit in this case has neglected, failed or refused to act, for the reason that it must be presumed that the sheriff had made full settlement as required by law prior to the discovery of the alleged error, and it does not appear that the Auditor's attention has ever been called to the balance which it is claimed the sheriff owes the state because of the discovery of this error. It seems to us there is merit in this contention. The right of the tax commissioner to institute suit under § 7 of ch. 10 B only exists when the officer or officers charged by law with that duty neglects, fails or refuses to do so after being furnished with a copy of the audit. It cannot be said in this case that the auditor has ever failed, refused or neglected to bring such a suit for the reason that there is no averment in the declaration that his attention has ever been called to the error in the sheriff's account.

Our decision is therefore to affirm the judgment of the circuit court of Wood county in the case brought by the State of West Virginia at the relation of the tax commissioner; and to reverse the judgments in the cases brought by the state at the relation of the tax commissioner for the use and benefit of the county court and the two boards of education; to overrule the demurrers to the declarations in those three cases; and to remand the same to the circuit court of Wood county to be further proceeded with.

*Reversed and remanded.*