## UNITED STATES v. NEW AMSTERDAM CASUALTY CO.

No. 2421.

Circuit Court of Appeals, First Circuit.

June 5, 1930.

Charles H. Eden, Asst. U. S. Atty., of Providence, R. I. (Henry M. Boss, Jr., U. S. Atty., of Providence, R. I., on the brief), for the United States.

Daniel T. Hagan, of Providence, R. I. (Louis Halle, of New York City, and C. Bird Keach, of Providence, R. I., on the brief), for appellee.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

In this suit on a bond, due execution and breach were found by the court below, but on proceedings to chancerize the bond a verdict and judgment were entered for the defendant. The case comes up on agreed facts, which may be summarized as follows:

On January 17, 1923, the British schooner Dorin was picked up in distress about 200 miles from Nantucket Lightship, and towed into the port of Providence, where, on January 19, 1923, she was duly entered and a copy of her manifest filed. This manifest, sworn to by Brin L. Coats, as master, showed the schooner was loaded with a cargo of liquors, shipped from St. Pierre, Miquelon, and consigned to the order of the shipper at Nassau in the Bahama Islands. In order to obtain clearance, she was required to give a bond for the estimated amount of duties on said cargo, in the sum of $41,900, conditioned as follows: "If no merchandise laden on said British Schooner Dorin, shall be landed in the United States without entry therefor having been made and a permit secured from the Customs Officer, and if within six months from the date hereof, such landing certificate or other evidence shall be deposited with the Collector of Customs at the Port of Providence, Rhode Island, as the Secretary of the Treasury may by general regulation require, then this obligation shall be void; otherwise, it shall remain in full force and effect."

This was a statutory bond, given under section 442 of the Tariff Act of 1922, c. 356, 42 Stat. 858, 952, 19 USCA § 252. This stat-

ute provides that, when any vessel having on board merchandise shown by the manifest to be destined to a foreign port, after report and entry of such vessel, she may be required "to give a bond in an amount equal to the estimated duties conditioned that no merchandise shall be landed in the United States from such vessel without entry therefor having been made and a permit secured from the customs officer and for the production of such landing certificates or other evidence of compliance with such bond as the Secretary of the Treasury may by general regulations require."

The applicable regulation of the Treasury Department provides: "When a vessel clears for a foreign port with merchandise destined to such port or to a number of foreign ports and also when a vessel clears for a foreign port with merchandise to one or more other domestic ports, a bond should be taken on Customs Form 3219 and cancelled upon the production of consular certificates showing the landing at such foreign ports of the merchandise manifested therefor."

The Dorin cleared from Providence on January 30, 1923. On February 16, 1923, she was found by the steamship Vasari flying distress signals about 30 miles southeast of Sandy Hook. The captain of the Dorin then gave his name as Charles H. Smith, and told the first officer on the Vasari that he had "no cargo on board, it having been discharged into some other vessel." He also said that he had no fuel or water; that he wanted to abandon the Dorin. The Vasari took off the crew, and landed them in New York on February 16. Two days later the Dorin was found by the coast guard cutter Seneca and towed into New York, arriving on February 19. It was then found that, although her foremast and jib boom had been broken off and her anchors and chains lost, otherwise she was in excellent condition. She was released to her owners in New York in June, 1923, and proceeded to sea.

With the agreed facts, affidavits of four alleged members of the Dorin's crew were submitted, each of which, after describing the wrecking by the storm conditions met by the vessel, ended with this statement—"that no part of the cargo of the said vessel 'Dorin' was taken off or unloaded at any time from the time we left the port of Providence until the time we abandoned the said vessel, and at the time we abandoned the said vessel the said cargo was still aboard the said vessel."

In 1926 the United States brought suit on this bond against the surety only. In three counts plaintiff alleged the execution and breach of the bond, by reason of failure to deposit with the collector of customs at Providence any landing certificate showing the landing of said merchandise then on said British schooner Dorin either at a foreign port or at any port of the United States or any other evidence of landing of said merchandise at any place.

On December 28, 1927, the defendant pleaded that it had "well and truly observed, performed, fulfilled and kept all and singular, the covenants, articles, clauses, provisos, conditions and agreements."

By amendment filed on February 28, 1929, it pleaded the general issue; thus denying that the "supposed writing obligatory" is its deed.

Jury was duly waived, and the case was heard by the District Judge, who found that the bond was properly required under the Tariff Act, supra, and that it was duly executed; and:

"3. Prior to the institution of this suit no application was made to the Collector of Customs to obtain a cancellation of the bond, because of the inability of the owners of the schooner to produce the landing certificates, supported by adequate proof within the intendment of the customs regulations.

"4. There was a breach of the terms of the bond by the owners of the Schooner Dorin in failing to file with the Collector of Customs at the port of Providence the landing certificate, or in lieu thereof satisfactory evidence of its inability so to do, within the intendment of the customs regulations.

"5. Counsel for the Government and for the defendant [have] stipulated that the bond in this case is to be dealt with as an indemnity and not a penal or forfeiture bond."

Judgment was thereupon entered for the plaintiff and the bond ordered to be chancerized. In the chancerizing proceedings, no evidence beyond that already outlined was offered on either side. The court thereupon ruled as follows:

"On the question of whether there has been a breach by the obligor of the terms and conditions of the bond, the court holds that there has been, by virtue of the failure of the obligor to produce the landing certificate at a foreign port of the cargo or in lieu thereof any evidence establishing without its fault. the inability of the obligor so to do. The question here presented is whether, after the bond has been chancellorized in a proceeding to establish the damages to the government,

there is **any** basis to assume such landing merely because of the breach of the obligor through its failure to produce a landing certificate. It is the contention of the government that knowledge of the disposition of the cargo is peculiarly within the knowledge of the Dorin Shipping Company, Ltd., and therefore that the government should be permitted to rest upon the assumption that the cargo had been landed and recover the full amount of the bond in the same manner as if it were a penal bond. The Dorin Shipping Company, Ltd., which alone in any practical sense could be assumed to be possessed of that knowledge, has never been made a defendant to this action. The case is solely against the surety company.

"The court has examined with care the stipulated facts and finds therein nothing which would constitute a prima facie case of the landing of any part of the 'Dorin's' cargo in the United States. If the cargo had consisted of something other than liquors it is doubtful if anyone would seriously urge the propositions advanced by the government in this case as a matter of law. I know of no rule of law applicable to an action of this kind which would warrant a different course of procedure or the application of different rules of evidence merely because of the nature of the merchandise constituting the cargo. In order to uphold the position of the government in this case it would be necessary to add an additional paragraph to the bond itself, substantially a paragraph which would amount to a stipulation between the parties that upon the failure of the obligor to file within the stipulated time the landing certificate it could be presumed and assumed that the cargo had been landed in the United States and that the burden would fall upon the obligor to disprove that inference. Such an added provision would materially alter the scope and character of the undertaking entered into. No cases have been cited which would warrant the following of such a practice. The verdict in this case may be entered for the defendant."

As above noted, this is a statutory bond, given to secure the government for the exact amount of the estimated duties on the Dorin's cargo. This bond, like every other written instrument, is to be so construed as to effect the purpose of the parties.

The obvious purpose of the bond is to require the payment of the estimated duties on the cargo, unless and until the defendant furnishes the evidence designated in the condition of the bond. The instrument is therefore to be differentiated from bonds given, with an arbitrary penal sum, to secure the performance of an undertaking, where the damages to the plaintiff may be, and generally are, much less than the penal sum of the bond. Some light is thrown upon the proper interpretation of the bond by the following provision of Rev. St. § 960, 28 USCA § 784, which reads:

"*Suits on Bonds for Recovery of Duties; Judgment; Continuance.* When suit is brought on any bond for the recovery of duties due to the United States, it shall be the duty of the court to grant judgment at the return term, upon motion, *unless the defendant, in open court* (the United States attorney being present) *makes oath that an error has been committed in the liquidation of the duties demanded upon* such bond, specifying the errors alleged to have been committed, and that the same have been notified in writing to the collector of the district before the said return term; whereupon a continuance may be granted until the next term, and no longer, if the court is satisfied that such continuance is necessary for the attainment of justice."

The language in this statute, that judgment shall be promptly rendered *"unless the defendant * * * makes oath that an error has been committed in the liquidation of the duties demanded upon such bond,"* etc., plainly imports that the burden is upon the defendant to show that the real duties are less than the penal sum of the bond given as security for their payment.

Some weight is to be given also to Rev. St. § 963, 28 USCA § 787, providing:

"*Interest; in Suits on Bonds for Recovery of Duties.* Upon all bonds, on which suits are brought for the recovery of duties, interest shall be allowed, at the rate of 6 per centum a year, from the time when said bonds became due."

Clearly, unless the penal sum is no larger than the duties, there would be no occasion for this statute allowing interest in order to give the government the full and timely payment of the duties. Compare 2 Sedgwick on Damages (9th Ed.) § 678 and cases cited.

As pointed out in 2 Sedgwick on Damages (9th Ed.) § 680, entitled "Statutory Bonds," "The measure of damages is substantially indicated by the terms of the instrument as authorized by the statute. The cases turn chiefly on the interpretation of particular words, and the construction of particular statutes; and the ordinary rules for measuring damages yield to the construc-

tion of the statute under which the bond is given."

In 2 Sutherland Damages (4th Ed.) § 438, it is said:

"An important consideration at the outset of the inquiry of damages, and at every step in its progress, is the *burden of proof*, or to what extent the plaintiff has made a *prima facie* showing. If his action is upon an express promise to pay money the establishment of the right to maintain it involves a *prima facie* showing of the amount due according to the purport and tenor of the promise. *Matter of discharge or reduction must be shown by the defendant."*

Obviously, in such a suit as this, if the damages and the penal sum are not equivalent, the taking of such bond by the government would, in most cases, be an idle proceeding. The government could rarely prove that a cargo was smuggled, for smuggling is always (at least in attempt) a secret undertaking.

We cannot reconcile the decisions bearing on the burden of proof in the cases arising either under federal or under the analogous state statutes, in which judgment is always entered for the penal sum and the bond then chancerized. That the burden in this or in analogous issues is upon the defendant see: Glidden v. Whipple, 23 R. I. 304, 310, 49 A. 997; Douglas v. Hennessy, 15 R. I. 272, 284, 3 A. 213, 7 A. 1, 10 A. 583; Andrews v. Belilove, 49 R. I. 446, 143 A. 857; 2 Greenleaf on Evidence (16th Ed.) § 300. See, also, Gray v. Gardner, 17 Mass. 188; Thayer v. Connor, 5 Allen (Mass.) 25; Jennison v. Stafford, 1 Cush. (Mass.) 168, 48 Am. Dec. 594; 9 C. J. p. 119.

In Call v. Foster, 52 Me. 257, 259, it is stated that in the case of Sargent v. Pomroy, 33 Me. 388, it was decided that a poor debtor bond is subject to chancery, though it is a statute bond, and that the plaintiff can recover only his actual damages; "but it is also held that, when he shows the amount of his judgment, he shows the amount of his damage, unless the defendant offers some proof which should control it."

The court also says (52 Me. 259): "In many of the cases reported, the damages assessed have been less than the debt, but in all such cases, so far as we have been able to ascertain, *the damages were reduced by proof on the part of the defendant."*

Cf. also Campfield v. Sauer (C. C. A.) 189 F. 576, 38 L. R. A. (N. S.) 837.

Apparently holding that the burden remains throughout on the plaintiff are the following: Gowen v. Nowell, 2 Greenl. (Me.) 13; State v. Hays, 30 W. Va. 107, 3 S. E. 177; Archer v. Archer's Adm'r, 8 Grat. (Va.) 539; Turck v. Marshall Silver Min. Co., 8 Colo. 113, 5 P. 838; Wright v. Wright, 49 Mich. 624, 14 N. W. 571.

The much discussed question of penalty or liquidation damages does not arise on this record. Compare 2 Sedgwick on Damages (9th Ed.) 676. The stipulation that the bond is to be construed as an indemnity bond and not as a penalty makes no difference in the result we reach. Cf. East Moline Co. v. Weir Plow Co. (C. C. A.) 95 F. 250; Chicago House-Wrecking Co. v. United States, 106 F. 385, 53 L. R. A. 122.

█ The crucial point is that under this bond, in the absence of evidence from the defendant, the penalty and the damages are identical.

The result is that the verdict for the defendant must be reversed, and judgment entered for the plaintiff in the amount of $41,900, with interest from the date of the writ.

The judgment of the District Court is vacated, the verdict set aside, and the case is remanded to that court with directions to enter judgment for the plaintiff in the amount of $41,900, with interest from the date of the writ.